here. My name is Carl Gunn. I'm with the Federal Public Defender in Los Angeles. The way I'd put the issue in this case, your honors, is whether we're going to let our courts sink to the level of bringing people before the court in chains as a matter of general policy. Well, before we get to that, could you explain the procedural posture of this case and what is, what the remedy is that you wish? I think, I mean, I think there isn't a remedy you can give these defendants, your honor, because the harm that's been done to these defendants is already done. That, of course, gets into the issue of jurisdiction. And I think the issue that comes up there is whether the capable of repetition yet evading review acceptance of the mootness doctrine applies. And as I've argued in my papers, we believe it does. This case is actually very similar and very close to the Oregon Advocacy Center case. That's probably the main case that we rely on. But when you filed this case, was relief possible? When we filed the appeal to the district court, no. When we made the motion to the magistrate court, yes. Because, of course, at the magistrate court we were standing beside our clients and they were standing there in the chains. And we were asking to have those chains removed. The magistrate court, of course, said no. And it said no in all of the, I think it's seventeen or so cases where we made the motion. At that stage, there could have been a remedy and there could have been relief. At the stage of the appeal to the district court, no. But I think, and I believe this was briefed there as well, our position was the capable of repetition and evading review exception applied there. And our position is it applies here. Is the classic case for that exception the abortion case? No, I think there's, I think that's one example. But, frankly, the cases that are more closely on point are three criminal procedure cases that I cite. Gerstein v. Pugh, very similar, dealt with whether defendants were entitled to a probable cause determination before they could be held in custody. Sort of an initial preliminary part of the criminal process. McLaughlin v. County of Riverside, whether they were entitled to that determination within forty-eight hours. Same sort of early stages of a criminal proceeding. Oregon Advocacy Center... It's not brought as class actions, though. Not brought as part of a criminal proceeding, but brought as separate actions on behalf of a class. Correct. And that's why I think the Oregon Advocacy Center is really important. That case is very important because that case was not brought as a class action. That case was brought by, I believe, a public service or public interest group. But it was brought as individual cases, at least as a civil case. That's correct, Your Honor. But it's a civil case about criminal proceedings. It was a civil case about incompetence. I'm not sure that it makes a difference, but has there been an instance of the capable of repetition doctrine that arises in what is literally a criminal appeal? The only cases I found... I've looked and haven't found it. The closest cases I've found, Your Honor, are the three I cite, Gerstein, McLaughlin and Oregon Advocacy Center. All of which are technically civil cases. Technically, yes. Is there a reason for a difference? I don't think so, Your Honor. I don't think so at all, especially when you look at the fact that those cases involved criminal proceedings. I mean, if we had, if we could, if we could bring cases ourselves as a Federal public defender instead of just litigating cases where we were already appointed, then that's, I suppose, the way we'd do it, to make it clean, and then there'd be no question about the analogy to Gerstein and McLaughlin. But I think that... But basically, challenging it in the individual criminal proceeding is actually a more appropriate way to go in some ways, isn't it? Because that's where it happens. Probably true. Though I suppose if you have a general policy, you could also do it in some sort of class action. But I frankly don't know, I don't know whether a group could bring a class action in that context, perhaps. Maybe it could, maybe it couldn't, but I know we can't. And I know we believe this issue is very important, and this was a context we sought to bring it in, especially when you have the Oregon Advocacy Center, and especially when we have, basically, we have 17 consolidated appeals here that are really are a functional equivalent of class action. And the district courts all, they handled them separately? The magistrate courts handled them separately. They were consolidated... Before the district court. And I would note that the government made no argument there about mootness or lack of jurisdiction or anything like that. What's the situation in other district courts or in other areas in the United States, in federal courts, magistrate courts? Are there other rules like this that have been litigated? Well, I'll preface it by saying there's nothing, of course, in the record about that. I practiced in the, if the court wants to hear my understanding, I can give it. My question was, was there anything in the record? No, there's nothing in the record, Your Honor, that I recall anyway. So, no, I don't believe so. There is in the record that in our district, the Central District of California, this was not the practice until very recently. And, of course, that's, to some extent, a major part of our point, though I don't think our argument turns on it, is we, in our district, there is a, there is an experience with thousands of court appearances with unshackled defendants, and the most rare number of instances where anything happened in terms of flight or disruptive conduct by a defendant. What is there in this record that shows that there's a need for this kind of policy, in your view? I believe absolutely nothing, Your Honor. But let me tell you what's there, and I'll tell you what there is in response. And the court can, of course, evaluate then that for, that then for itself. All that I see in there, there's two declarations from a United States Marshal's Office representative. He makes two general assertions and refers to one specific incident, and that's it. General assertion that it's, quote, necessary to ensure that courtrooms are safe and orderly, unquote. Second general assertion, even while restrained, defendants have assaulted, while restrained, defendants have assaulted staff of the United States Marshal's Service as well as other members of the government. No examples given, no statement that it had ever happened in the case of an unshackled defendant. The one specific incident that the government offered is actually after the magistrates established their policy. That was a defendant who, one, couldn't have been shackled without specific, defendant-specific findings anyway because it was a jury trial. And two, they had, they admitted defendant-specific concerns that they could have pointed to before the incident happened because of things the defendant had been saying to the marshal. Very similar, actually, to things in the Hamilton v. Vasquez case, which I believe Your Honor wrote, where there were some specific indications of the defendant. In response to that, what we proffered, Your Honor, and I think this is as legitimate evidence in the record as what the Marshal's Office proffered, we proffered through my statement, based on my experience, that over 19 and a half years, I had heard, not seen, but heard of three or four incidents. And that I'd done a survey to which 19 other of our deputies had responded that produced about two or three other examples. So we're talking about maybe six or seven incidents over years and years and thousands and thousands of unshackled defendant experiences. That proffer was never contradicted at any point in the proceedings. It wasn't contradicted in the magistrate court. It wasn't contradicted in the district court. It hasn't been contradicted in this court. Okay. All of the cases that I am familiar with on shackles, I believe, had to do with shackling at trial. So how do you get to your argument that at this stage, where you're just before a magistrate judge, that there's a due process violation? Two ways we get there, Your Honor. First of all, let me start with what I think the argument would be. And then there actually are the two or three cases that address it in that context. But no Ninth Circuit cases, of course. If you read the shackling cases, there are multiple concerns at issue. And two of them, frankly, are the sorts of concerns that I think concern us the most. One, the decorum and dignity of the proceedings. And included within that, the dignity of the defendant. Are we going to have people shuffling around in chains like shaves or slaves or chain gangs or people in the Russian gulags? I mean, that's a big part of it. Second, and this is the cases dealing with in trial point to these concerns also. Also, the effect that has on a defendant in terms of his ability to communicate with counsel, demoralizing the defendant so that his demeanor, so there are these other reasons. As I understand it, this is only, they are, these are only people who are in custody. Well, of course. So they're in, aren't they shackled when they are on the bus and when they're brought to court? Right. But I think it's different to have to stand up there beside your lawyer and shuffle up to your lawyer in chains before the judge who's going to be doing you justice. And I think the cases. And what's different about that in terms of impact? I mean, I'm trying to understand your argument on that. I think because surely the lawyers aren't going to be influenced by it. And hopefully not the judges. And that's what the cases say. The cases are loath to find prejudice on the part of the judge. I just can't, it's hard for me to see that the lawyer representing the defendants are going to be influenced by the fact their clients are shackled. I think you're on. They're fighting to get the shackles off. But it doesn't seem like it would interfere with their function. I think there's two or three things, Your Honor, and these are things the cases point to. I think it's the decorum and dignity of the proceedings. And I think that's an important consideration. I think it has a demoralizing effect on the defendant. Now, how do you quantify that? How do I point something specific about prejudice? But I think my client's sitting there demoralized, not really participating in the process. Is that an affidavit from a defendant? No. No. And I don't think it's something you can make an affidavit. But these are things the cases point to. And I think what the cases recognize is there is that effect. There's also what Justice Brennan referred to as that respect for the individual, which is the lifeblood of the law. Judge Cardamone in the Second Circuit in a non-jury case complained about defendants, quote, parading about a courtroom like a dancing bear on a lead. I don't think we, our courts, need to stoop to that level, especially when we don't have any defendant-specific concerns, assuming we don't, and if we don't have an experience of generalizations that we don't have in this case. There are some cases, Your Honor asked me about, where I get the authority. There aren't a lot of cases dealing with it in the non-jury context, I suspect because it's hard to get around a harmless error problem, and maybe because people wonder about the mootness issue that Your Honor raised initially with me. Maybe you don't get it before the courts of appeals very easily. You know, I'm not too concerned about mootness because I can see that if it's wrong to have them shackled before the magistrate judge, it's never going to get reviewed in time. So at least for me, it seems like it's capable of repetition. But I have some problem on the substance of the due process issue when it doesn't affect a jury and doesn't affect the determination of guilt, and there's nothing in the record before us that explains what the impact is functionally before the magistrate judge. I think that actually, I think the issue of jury prejudice goes more to the harmless error. For example, there's many cases, there's at least a couple cases, Castillo v. Stainer and Duckett v. Godinez, Ninth Circuit cases, that held the jury didn't see the shackles, and because the jury didn't see the shackles, not that there wasn't error because of that, but because the error was harmless. Yeah. Okay. You have more than used your time, and we'll give you 30 seconds on rebuttal if there's something that you really want to. All right, Your Honor. Thank you. May it please the Court, Patrick Fitzgerald on behalf of the United States. Your Honor, if I might address first the mootness issue which was touched on. Again, as we said in our papers, the government does not contest that this isn't an issue that isn't going to be resolved before it gets to the district court or the Ninth Circuit. But as we pointed out in our papers, all the other cases in which this has arisen have been civil cases. They have been cases in which there was class counsel, there was a certified class, and if- What difference does it make? Your Honor, I think it makes several differences. It makes it clear the nature of the parties, although our office and myself as a criminal prosecutor certainly are pleased to represent the decision of the magistrate or defend the decision of the magistrate judges and the marshal service in this section, in this particular lawsuit, this is not a classic case where we have the government against the defendant because we're trying to prosecute the defendant for his crimes. It's really what we have here is the public defenders reaching out and representing a class of future defendants and really what is and should be a civil matter. Well, look, there's a lot to what you're saying that's true, that normally this kind of thing would be brought by some wealthy defendant who could muster a class action. There's not a lot of money in it, I'm sure. So the question is, can anyone ever get it here that way? And at least for me, it seems that if the defenders raise it, that we ought to address it. Well, Your Honor, just to point out- So to me, the reaching out kind of thing doesn't really move me off the merits of it. What are the merits of it? All right, just respond, Your Honor. McLaughlin got to the Supreme Court, and I don't think there was a lot of money in that. Sosna got to the Supreme Court, and there wasn't a lot of money in that. Well, there are cases that make their way through the courts without money involved. But, you know, practically, it's kind of hard to see how the average shackled accused person is going to muster some way to get this up to an appellate court. Well, again, Your Honor- You can't do it in a criminal case. Yeah, I'm not sure where they're going to find the trial lawyers who are going to bring it as a class action. And all I can say, Your Honor, is in several cases that have been cited by both parties, it did happen. So I- Well, let's- But turning to the merits- At least for me, I'd say, let's, you know, I'd like to see you get to the merits of it. Well, turning to the merits, Your Honor, in regard to the issues that Mr. Gunn has raised, those are certainly serious issues, and they were issues that the marshals dealt with, the magistrate judges dealt with, both collectively and individually. And- but having reached a decision at that level, there are really no cases which state that there is some sort of due process right that says that this considered decision that has been made by both the judges and the agency, namely the United States Marshal Service, that has responsibility for these matters, that they, having reviewed all of these issues, considered all- I know that. What is there in the record that shows that they came to a conclusion as to conditions in the central district that required this? Your Honor, there were the extended discussions by Magistrate Judge Ike and Magistrate Judge Walsh that are in the record before the Court. And again, this gets back to my earlier point, that because we're representing, kind of, at an angle, the real parties in interest, obviously, the U.S. Attorney's Office was not at the discussions that the magistrate judges had on this issue. However, we know from the statements that they made in court in the- in these cases that they did have discussions about this. They took these issues seriously. You know, I don't care if they had discussions, frankly. To me, it's irrelevant if they had discussions. What I care is if there's evidence in the record that someone who knows something about it has said that there's a risk or a danger to them, absent shackling. You know, like if the marshals have sworn testimony in the record saying that if the magistrate judges don't do this, somebody's going to get hurt. I'd be- or something like that. I'm interested in that. But just the fact that the magistrate judges met and, you know, over coffee or a beer or in a conference room, decided we want to do this, who cares? Well, Your Honor, the meetings they had were in response to the concerns of the United States Marshal Service and the chief deputy and then acting U.S. How do we know what those are? How do we know what- what are the facts that led to these concerns? Well, Your Honor, again, because this is not a civil case, we don't have a full record. But what we do have are the declarations that were put in by the- by- Did you have- were you denied an opportunity to put in information? No, Your Honor. But we- but we- and we did put in information from chief deputy and then acting Marshal Mositis as to this issue. And he put in information in there as to what the procedures were and why they were appropriate. And that is in the record before this court. And he both mentioned that there had been incidents involving defendants and that in his opinion and the opinion of the Marshal Service, the procedures that they had in place were necessary for the order and security of the courtroom and the safety of the persons who are in the courtroom. Is there anything in this record that shows what's done in other districts? Is it Southern District of California? No, Your Honor. There- there is not. Well, what if this district is the only district in the country doing this? Would that be relevant? I don't think so, Your Honor, because again, there could be district-specific reasons why it's- It could be. Yes, Your Honor. And- and that- What evidence have you pointed to that's in the record that says that there's a need in this district, a safety need to do this? Your Honor, the large number of defendants that often are at these preliminary hearings and that- How many? In the record? I've never been to an initial appearance in Los Angeles. I come from a much smaller district. How many defendants are going to be there at one time? Your Honor, it could be anywhere from four to twenty or more. There was a large- I think there are a hundred. So what? Let- you know, it's not like it's going to be like Spartacus and their start of revolt. But what- what is there in the record from a knowledgeable security expert like the U.S. Marshal's Office that says this is necessary? Your Honor, there are- Specificity. Not that they discussed it, but something that says this- there's a need for this. Your Honor, there's a combination. There's the two declarations from Acting Marshal and Chief Deputy Marshal Masias. He had two positions. And those are in- in the record. And then there was- And what do they say? And what they say is that- well, they say a number of things. They say that- On the issue that I'm raising. Well, the main thing it says is that it is impossible- he says that it is impossible at that time for- at these initial hearings for the Marshal's Service to conduct a defendant-by-defendant review to determine to their satisfaction which defendants are going to be a safety risk and which ones are not. They said it's not possible at that time. That is certainly something specific to these particular hearings that he states in the declaration. He also points out again that- Does that mean every single person or- who's brought before the magistrate judges is shackled or just the ones accused of certain crimes? Well, Your Honor, it's- Someone was charged with- Martha Stewart was there. She was charged with a federal securities violation. Is she going to be in shackles when she goes up before the magistrate judge? Your Honor, if she was considered an in-custody defendant, she would be. She would be. And- Would there be any sense in that? Well, Your Honor, there is a sense of consistency which I think deals with one of the issues- I'm not saying she should get a pass, but I'm just trying to understand this rule. It just applies to everyone, blanket. It applies to everyone who is an in-custody defendant. That is correct, Your Honor. Again, what it applies to also, in part, it's graduated in that they're fully restrained when they're being transported to the courtroom. They are then in handcuffs and leg restraints while they are in the courtroom. But then when they are addressing the court, they are only in the leg restraints, so- Are there any marshals in the courtroom when they're- security officers in the courtroom when they're- brought before the magistrate judge? Well, yes, Your Honor, there are. And how many are there? Well, it depends- If you could tell us that. It depends in part on how many defendants are there, but one of the things in the declaration from Marshal Mastitis is stating that, in part because of funding issues and other issues, the marshal service is not at its full complement, and therefore there are less than he ideally would like. What are the defendants wearing? Your Honor, usually they're wearing their- at that point, they're wearing their street clothes, what they were arrested- usually what they were arrested in, they're wearing their street clothes at that point. They can't have weapons on them, correct? Well, if the search- obviously, there's always a difficulty, but they should have been searched, Your Honor. There's some screening procedure to make sure they don't have a weapon on them, I assume, correct? When they're booked, Your Honor, that's correct. What about it when they're brought into the courtroom? Because they've been in custody, right? Yes, Your Honor. And now they're on a bus going from a facility to the court. Before they walk into the doors of the courtroom, is there any kind of screening to make sure they haven't picked up a weapon out of the prison? Your Honor, I'm not sure what supplemental screening is courtroom-specific for the in-custody defendants. Okay. Thank you. Two quick points, Your Honor. Two sort of follow-up points to the Court's questions. First of all, I think many of the questions you were asking, Judge Gould, point out the problem with having a general policy. Maybe one of the factors that could enter into a case-specific or defendant-specific, maybe, consideration is things like, well, there's not enough marshals or law enforcement officers today, or this defendant is particularly dangerous. But this policy applies to everyone. This policy applies to a blind, disabled Social Security defendant who gets brought in. With respect to a point, Judge Schroeder, that you made, I think our position, of course, is you can't have a general policy, period. It has to be defendant-specific. But at the very least, if you're going to have a general policy, I don't think it should be one that could or should be established through basically a back-door meeting between the marshals and the magistrates without any input or cross-examination or anything like that. Thank you. Thank you. The matter just argued is submitted for decision. We'll hear the next matter for argument, which is United States v. Howard.
judges: Schroeder, Gould, Clifton